08-1862-ag
Garcia-Padron v. Holder

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: December 8, 2008                    Decided: February 26, 2009)

Docket No. 08-1862-ag

EMIGDO LOOESKY GARCIA-PADRON,

*Petitioner,*

— v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,[1]

*Respondent.*

B e f o r e:

KEARSE, RAGGI, and LIVINGSTON,

*Circuit Judges.*

Petition for review of a judgment of the Board of Immigration Appeals dismissing an

appeal from an Immigration Judge's order denying petitioner waiver of inadmissibility under

former section 212(c) of the Immigration and Nationality Act, on the ground that petitioner's

conviction of petit larceny after the effective date of the Illegal Immigration Reform and

Immigrant Responsibility Act of 1996 ("IIRIRA") rendered him ineligible for such relief.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Eric H. Holder, Jr. is
substituted for Michael B. Mukasey as respondent.

We conclude that section 309(c) of IIRIRA preserves petitioner's eligibility for relief under former section 212(c) because petitioner's deportation proceeding commenced prior to the effective date of IIRIRA.

Petition GRANTED, judgment VACATED, and case REMANDED for further proceedings.

---

MATTHEW L. GUADAGNO (Jules E. Coven, Kerry W. Bretz, *on the brief*), Bretz & Coven, LLP, New York, New York, *for petitioner*.

JESSE M. BLESS, Trial Attorney, Office of Immigration Litigation (Gregory G. Katsas, Assistant Attorney General, Civil Division, Jennifer Paisner Williams, Senior Litigation Counsel, *on the brief*), Civil Division, U.S. Department of Justice, Washington, D.C., *for respondent*.

---

REENA RAGGI, *Circuit Judge*:

Emigdo Looesky Garcia-Padron petitions for review of the March 20, 2008 order of the Board of Immigration Appeals ("BIA"), which dismissed Garcia-Padron's appeal from the April 13, 2006 written decision of Immigration Judge ("IJ") Margaret McManus, in which the IJ denied petitioner's request for waiver of inadmissibility under former section 212(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(c) (repealed 1996). See In re Garcia-Padron, No. A30 868 457 (B.I.A. Mar. 20, 2008), aff'g No. A30 868 457 (Immig. Ct. New York City Apr. 13, 2006). Because we identify legal error in the BIA's

failure to apply the law as it existed before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-546, 3009-597, to petitioner's request for section 212(c) relief, we grant the petition, vacate the BIA judgment, and remand this case to the agency for further proceedings consistent with this opinion.

## I. Background

Petitioner Garcia-Padron is a citizen of the Dominican Republic who has been a lawful permanent resident of the United States since August 21, 1972. He has been convicted of numerous crimes in New York, and it is the timing of his most recent convictions that give rise to the legal issue presented by his petition. For purposes of addressing Garcia-Padron's claim, we observe that on October 14, 1992, petitioner was convicted upon a guilty plea of two counts of second-degree attempted robbery in violation of New York Penal Law § 160.10 and was sentenced to one-to-three years in prison. While incarcerated, Garcia-Padron was served with an Order to Show Cause charging him with deportability under former section 241(a)(2)(A)(ii) of the INA for having been convicted of multiple crimes of moral turpitude not arising out of a single course of conduct. Garcia-Padron was paroled on August 24, 1993, and released into the custody of the Immigration and Naturalization Service ("INS"), from which he was released after posting an $8,000 bond.

3

Garcia-Padron thereafter violated his state parole by striking and grabbing the driver of an ambulance, which caused the ambulance to crash into a parked car, ejecting the driver from the ambulance. Following this parole violation, Garcia-Padron was returned to prison to serve the remainder of his three-year sentence for attempted robbery. Meanwhile, the INS requested that Garcia-Padron's deportation proceedings be administratively closed during his incarceration, and on February 22, 1994, the IJ granted the unopposed request.

On March 3, 1994, Garcia-Padron pleaded guilty to reckless endangerment in the second degree in violation of New York Penal Law § 120.20 and was sentenced to time served. He was subsequently released from prison on September 7, 1995, having completed the remainder of the three-year sentence on his 1992 attempted robbery convictions.

Garcia-Padron's absence from the New York state penal system was short-lived. On December 15, 1998, he was convicted following a bench trial of petit larceny in violation of New York Penal Law § 155.25 and third-degree menacing in violation of New York Penal Law § 120.15. He was sentenced to time served and three years' probation.

Approximately three years later, on December 19, 2001, the INS reopened Garcia-Padron's deportation proceeding and, on August 7, 2002, the agency amended the charges of deportability to include Garcia-Padron's 1998 conviction for petit larceny. Garcia-Padron appeared before the IJ on January 29, 2003, and conceded deportability under INA section 237(a)(2)(A)(ii) in light of his convictions for "two or more crimes involving moral

4

turpitude, not arising out of a single scheme of criminal misconduct," 8 U.S.C. § 1227(a)(2)(A)(ii),[2] specifically, his 1992 attempted robbery convictions and his 1998 petit larceny conviction. He applied for a waiver of inadmissibility under former section 212(c) of the INA, which the IJ denied on the ground that petitioner's 1998 petit larceny conviction rendered him ineligible for such relief. The BIA dismissed the appeal, concluding that the repeal of section 212(c) of the Act prior to Garcia-Padron's 1998 conviction precluded him from such relief with respect to that conviction. See In re Garcia-Padron, No. A30 868 457 (B.I.A. Mar. 20, 2008). This petition followed.

## III.    **Discussion**

### A.    Jurisdiction

Garcia-Padron concedes that he is deportable under 8 U.S.C. § 1227(a)(2)(A)(ii) because his two 1992 convictions for attempted robbery qualify as "two or more crimes involving moral turpitude." We lack jurisdiction to review a final order of removal against an alien who, like Garcia-Padron, is removable under § 1227(a)(2)(A)(ii), where, as here, both predicate offenses are subject to a sentence of one year or more.[3] See 8 U.S.C.

_____

[2] Former section 241(a)(2)(A)(ii) of the INA was transferred to INA section 237(a)(2)(A)(ii) by Pub. L. No. 104-208, § 305(a)(2), 110 Stat. 3009-546, 3009-598 (1996), and from 8 U.S.C. § 1251(a)(2)(A)(ii) to § 1227(a)(2)(A)(ii), where it is currently located. Our remaining citations to this section of the INA will be to its present statutory incarnation.

[3] Both of Garcia-Padron's predicate acts were Class D felonies in New York, individually subject to a sentence of up to seven years. See N.Y. Penal Law

§ 1252(a)(2)(C). We may, however, review "constitutional claims or questions of law" raised by a petitioner in such circumstances. See id. § 1252(a)(2)(D); Ali v. Mukasey, 529 F.3d 478, 488-89 (2d Cir. 2008). Because Garcia-Padron's petition calls upon us to determine his statutory eligibility for discretionary relief under former INA section 212(c), we proceed to address that claim. See Channer v. Dep't of Homeland Sec., 527 F.3d 275, 279 (2d Cir. 2008) (noting that scope of review under § 1252(a)(2)(D) includes petitions "based on errors of law, including the erroneous application or interpretation of statutes . . . and determinations regarding an alien's statutory eligibility for discretionary relief" (internal quotation marks and emphasis omitted)); Phong Thanh Nguyen v. Chertoff, 501 F.3d 107, 111 (2d Cir. 2007) ("The phrase 'questions of law' encompasses, inter alia, . . . an alien's statutory eligibility for removal and relief from removal." (internal citations omitted)).

B.    Standard of Review

"When the BIA issues an opinion, 'the opinion becomes the basis for judicial review of the decision of which the alien is complaining.'" Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir. 2005) (quoting Niam v. Ashcroft, 354 F.3d 652, 655 (7th Cir. 2004)). Where, as here, the BIA does not adopt the decision of the IJ to any extent, we review the decision of the BIA. See id.

"We review underlying questions of law and the application of law to fact de novo."

---

§§ 70.00(2)(d), 110.05(5), 160.10.

6

Roman v. Mukasey, 553 F.3d 184, 186 (2d Cir. 2009). "[W]hen our jurisdiction depends on the definition of a phrase used in the INA, a statute that the BIA administers, and when the intent of Congress is unclear and the agency's interpretation is reasonable," we defer to the BIA in accordance with Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). James v. Mukasey, 522 F.3d 250, 253-54 (2d Cir. 2008) (internal quotation marks omitted). However, "no such deference is warranted where, as in this case, the challenged BIA decision is unpublished, and, in any event, the text of the statute is clear." Phong Thanh Nguyen v. Chertoff, 501 F.3d at 111 (citations omitted).

C.    Garcia-Padron's Eligibility for Section 212(c) Relief

The question of law presented by this appeal is whether Garcia-Padron was statutorily eligible for waiver of inadmissibility under former section 212(c), despite the fact that this statutory section was repealed by IIRIRA in 1996, well before petitioner's 1998 conviction for petit larceny. We hold that Garcia-Padron was eligible and that the BIA erred in concluding otherwise.

1.    Repeal of Section 212(c)

Under former 212(c), "legal permanent residents who were subject to deportation, but who had resided in the United States for seven consecutive years, were eligible to apply for a discretionary waiver of deportation." Martinez v. INS, 523 F.3d 365, 368 (2d Cir. 2008). As we have explained, "[t]he decision of whether to award section 212(c) relief involved

7

only a balancing of the 'adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of [a section 212(c) waiver] appear[ed] in the best interests of this country.'" Kai Tung Chan v. Gantner, 464 F.3d 289, 295 (2d Cir. 2006) (second alteration in original) (quoting In re Marin, 16 I. & N. Dec. 581, 584 (B.I.A. 1978)); accord Martinez v. INS, 523 F.3d at 368.

In 1996, section 212(c) relief was first restricted and then eliminated. Section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277, which took effect on April 24, 1996, eliminated eligibility for section 212(c) relief for aliens convicted of specified crimes. See Domond v. INS, 244 F.3d 81, 84 (2d Cir. 2001). Shortly thereafter, IIRIRA, enacted on September 30, 1996, and effective on April 1, 1997, repealed section 212(c) altogether. See IIRIRA § 304(b), 110 Stat. at 3009-597. IIRIRA replaced section 212(c) relief with the more restrictive procedure for cancellation of removal under INA section 240A, codified at 8 U.S.C. § 1229b(a).[4] See Blake v. Carbone, 489 F.3d 88, 96 & n.6 (2d Cir. 2007).

_____

[4] Garcia-Padron also sought section 240A cancellation of removal before the IJ and the BIA. Both the IJ and BIA dismissed Garcia-Padron's petition for section 240A relief on the ground that he is statutorily barred from such relief as an aggravated felon. Garcia-Padron does not challenge this aspect of the BIA's decision, and we therefore do not address it.

8

## 2. IIRIRA Section 309(c) and INA Section 212(c) Relief

The IJ and BIA concluded that, because Garcia-Padron's 1998 conviction for petit larceny occurred after the effective date of IIRIRA, he was necessarily ineligible for relief pursuant to repealed section 212(c).[5] See In re Garcia-Padron, No. A30 868 457, at 2 (B.I.A. Mar. 20, 2008). Specifically, the BIA ruled that "[t]he fact that [Garcia-Padron] was already in deportation proceedings at the time of his 1998 conviction is irrelevant. . . . [T]he respondent is not eligible for section 212(c) relief with respect to the removability stemming from his 1998 conviction." Id. We disagree.

For aliens who were "in exclusion or deportation proceedings as of the title III-A effective date" of April 1, 1997, the savings provision in IIRIRA section 309(c)(1) clearly states that "the amendments made by this subtitle" – including the repeal of section 212(c) – "shall not apply, and . . . the proceedings (including judicial review thereof) shall continue

---

[5] The BIA's dismissal of Garcia-Padron's appeal appears to rest solely on IIRIRA's repeal of section 212(c). AEDPA's section 440(d) amendments to INA section 212(c) relief do not affect Garcia-Padron because, by regulation, section 440(d) of AEDPA "shall not apply to any applicant for relief under this section whose deportation proceedings were commenced before the Immigration Court before April 24, 1996." 8 C.F.R. § 1212.3(g). In promulgating § 1212.3(h), the Attorney General specifically noted that § 1212.3(g) would "continue[] to be relevant to aliens whose deportation proceedings were commenced prior to the enactment of AEDPA. The Department will therefore leave intact the existing provision of 8 C.F.R. [§] 1212.3(g), which will continue to govern cases falling within its parameters." Section 212(c) Relief for Aliens with Certain Criminal Convictions Before April 1, 1997, 69 Fed. Reg. 57,826, 57,832 (Sept. 28, 2004).

to be conducted without regard to such amendments."[6] IIRIRA § 309(c)(1). Construing this language in Tablie v. Gonzales, 471 F.3d 60 (2d Cir. 2006), this court noted that IIRIRA provisions generally "do not apply in the case of an alien who is in exclusion or deportation proceedings as of the [statute's] effective date." Id. at 62 (alteration in original) (internal quotation marks omitted).

Garcia-Padron's deportation proceedings began in 1993 and, although these proceedings were suspended while he was incarcerated, he nevertheless remained "in deportation proceedings" through the time IIRIRA took effect. As the BIA itself stated in In re Lopez-Barrios, 20 I. & N. Dec. 203 (B.I.A. 1990), "administrative closing is merely an administrative convenience. It allows the removal of cases from the immigration judge's calendar in certain circumstances. However, it does not result in a final order." Id. at 204; see also Arca-Pineda v. Attorney Gen. of the U.S., 527 F.3d 101, 104-05 (3d Cir. 2008) (noting that administrative closure does not restart petitioner's "physical presence clock" for purposes of suspension of deportation under former 8 U.S.C. § 1254(a)(1) because "administrative closure is a procedural convenience that may be granted if both parties to the removal proceedings agree, but it does not constitute a final order" (internal quotation marks

---

[6] On October 11, 1996, less than two weeks after IIRIRA was passed, Congress amended the language of IIRIRA section 309(c)(1), striking "as of" and inserting "before," to make section 309(c)(1) applicable "in the case of an alien who is in exclusion or deportation proceedings before the title III-A effective date." See Pub. L. No. 104-302, § 2, 110 Stat. 3656, 3657 (1996). This change is not material to petitioner's case.

and alteration omitted)); Noble v. Keisler, 505 F.3d 73, 75-76 (2d Cir. 2007) (noting that petitioner's deportation proceedings began in 1993, were administratively closed while he was incarcerated, and were reopened again in 2002, after which petitioner remained eligible for section 212(c) relief, which would not have been available if the proceeding had not been considered ongoing); Lopez-Reyes v. Gonzales, 496 F.3d 20, 21 (1st Cir. 2007) (noting that administrative closure is a "procedural convenience" that "temporarily removes a case from an immigration judge's calendar or from the Board's docket" with the consent of both parties). Precisely because Garcia-Padron's deportation proceeding commenced before IIRIRA's repeal of section 212(c), we conclude that petitioner is entitled to seek relief under that section.[7]

In assessing the effect of IIRIRA on petitioner's claim, the BIA mistakenly focused on the date of petitioner's 1998 criminal conviction for petit larceny, rather than the date on which petitioner's deportation proceeding began. The BIA concluded that, although petitioner "remains eligible for section 212(c) relief with respect to his 1992 convictions, the repeal of section 212(c) of the Act prior to his 1998 conviction precludes him from such relief with respect to that conviction." In re Garcia-Padron, A30 868 457, at 2 (B.I.A. Mar. 20, 2008). On its face, however, the plain language of IIRIRA section 309(c)(1) is concerned

---

[7] We express no opinion as to whether a balancing of the relevant factors would warrant a grant of such relief, a decision committed to the discretion of the agency. See De La Rosa v. U.S. Dep't of Homeland Sec., 489 F.3d 551, 552-53 (2d Cir. 2007).

11

only with the date on which a petitioner's deportation proceeding was initiated. The statute instructs that if that date is before April 1, 1997, the amendment repealing section 212(c) "shall not apply." IIRIRA § 309(c). We are compelled to identify error in the BIA's focus on the date of petitioner's post-IIRIRA conviction and in its failure to follow Congress's instruction to apply pre-IIRIRA law to claims like Garcia-Padron's.

The regulatory provision at 8 C.F.R. § 1212.3(h), which provides that "[a]liens are not eligible to apply for section 212(c) relief under the provisions of this paragraph with respect to convictions entered after trial," is not to the contrary. Section 1212.3(h) went into effect on October 28, 2004, and was promulgated to implement the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001). See Section 212(c) Relief for Aliens with Certain Criminal Convictions Before April 1, 1997 ("212(c) Relief for Aliens"), 69 Fed. Reg. 57,826, 57,826 (Sept. 28, 2004). As is clear from the title of the rule and the decision in St. Cyr, § 1212.3(h) addresses the retroactivity problem created when a petitioner has pleaded guilty to a crime prior to IIRIRA's effective date of April 1, 1997, and has deportation proceedings instituted against him after that date. See INS v. St. Cyr, 533 U.S. at 293 (describing petitioner who pleaded guilty to selling controlled substance before 1996 amendments and whose removal proceedings were commenced after both AEDPA and IIRIRA became effective). St. Cyr was concerned only with the reliance interest of aliens who had pleaded guilty under the pre-AEDPA/IIRIRA regime. See id. at 323 ("Given the frequency with

12

which [section] 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." (footnote omitted)). Consequently, § 1212.3(h) merely codifies the corollary rule that an alien who chose not to plead, but instead elected to go to trial under the pre-AEDPA/IIRIRA regime, was not entitled to assert the reliance interest identified in St. Cyr. See, e.g., Rankine v. Reno, 319 F.3d 93, 100 (2d Cir. 2003) (reasoning that, unlike the petitioner in St. Cyr, "those aliens who went to trial prior to the elimination of [section] 212(c) relief cannot show that they altered their conduct in reliance on the availability of such relief," and holding accordingly that "IIRIRA's repeal of [section] 212(c) is not impermissibly retroactive as applied to them"); see also 212(c) Relief for Aliens, 69 Fed. Reg. at 57,828 (noting that, in light of decisions including Rankine v. Reno, 319 F.3d 93, "the Department has determined to retain the distinction [in § 1212.3(h)] between ineligible aliens who were convicted after criminal trials, and those convicted through plea agreements"). Garcia-Padron's situation is the reverse of that present in St. Cyr: his deportation proceeding began under the pre-AEDPA/IIRIRA regime, and his subsequent conviction occurred under the post-AEDPA/IIRIRA regime. Because § 1212.3(h) was promulgated to deal with a retroactivity problem not present in this case, the regulation cannot supersede the plain language of IIRIRA section 309(c)(1), which preserves section 212(c) relief for petitioners, like Garcia-

13

Padron, whose deportation proceedings began under the pre-IIRIRA regime.

The government's reliance on Domond v. INS, 244 F.3d 81 (2d Cir. 2001), is also misplaced. In Domond, we considered and rejected the argument that AEDPA was impermissibly retroactive as applied to criminal conduct committed before AEDPA's enactment, where both the conviction for that crime and the commencement of the deportation proceeding occurred after AEDPA's effective date. See id. at 86 ("[I]t would border on the absurd to argue that Domond would have decided not to commit a crime if he had known that he not only could be imprisoned, but also could face deportation without the availability of a discretionary waiver of deportation." (internal quotation marks omitted)), rev'g 64 F. Supp. 2d 47, 49 (D. Conn. 1999) (noting that criminal conduct occurred on November 18, 1994, petitioner was convicted on November 8, 1996, and Order to Show Cause was issued on December 30, 1996, and served on Domond on February 24, 1997). Domond, however, is distinguishable because it did not involve IIRIRA section 309(c)(1) or deportation proceedings commenced prior to AEDPA and IIRIRA's effective dates.

The government has not provided any support for its contention that 8 C.F.R. § 1212.3(h) bars Garcia-Padron from seeking section 212(c) relief. Nor has the government addressed the contrary unpublished decision Beltran v. Mukasey, 286 F. App'x 914 (6th Cir. 2008), in which the Sixth Circuit applied the plain language of IIRIRA section 309(c)(1) to a factual situation similar to Garcia-Padron's. Beltran was served with an Order to Show

14

Cause in August 1994, charging him with deportability under former 8 U.S.C. § 1251(a)(2)(A)(ii). See id. at 915. In 2000, while Beltran's deportation proceedings were ongoing, he was convicted of fourth-degree criminal sexual conduct. Id. While his third petition to the Sixth Circuit was pending, the Department of Homeland Security moved for remand to allow the BIA "to clarify in the first instance the applicability of . . . 8 C.F.R. §§ 1212.3(g) and 1213.3(h)(3) in the case of an alien whose proceedings commenced prior to 1996, but who suffered an additional criminal conviction after April 1, 1997." Id. at 917 (citation and internal quotation marks omitted). The case returned to the Sixth Circuit, at which time the court reversed the BIA's primary ground for finding Beltran ineligible for section 212(c) relief, see id. at 918-19, but adopted the BIA's analysis as to IIRIRA section 309(c) and quoted it at length, see id. at 919-20. The Sixth Circuit concluded that Beltran "is technically eligible to seek section 212(c) relief as to his post-AEDPA and IIRIRA convictions because section 309(c) of the IIRIRA specifically makes the repeal of the pre-IIRIRA deportation laws, including repeal of section 212(c) of the Act, inapplicable to those aliens in deportation proceedings." Id. (internal quotation marks omitted). The court also noted that 8 C.F.R. § 1212.3(h) "should not be read to automatically bar relief under former section 212(c) of the Act for an alien who remains in old-law [i.e., pre-AEDPA/IIRIRA] deportation proceedings because to do so would countermand section 309(c) of the IIRIRA[,] which specifically preserved relief under former section 212(c) of

15

the Act for aliens in old-law deportation proceedings such as the respondent in this case." Id. at 920 (internal quotation marks omitted).

We note that the BIA, in several unpublished decisions, has itself taken the same position as the Sixth Circuit. In In re Palmer, No. A37 456 307, 2004 WL 2374953 (B.I.A. Aug. 24, 2004), the Board relied upon IIRIRA section 309(c)(1) to conclude that, "[s]ince the respondent remains in deportation proceedings [commenced prior to IIRIRA], he can seek forms of relief available in such proceedings even as to crimes committed subsequent to the changes made by IIRIRA." Similarly, in In re Juncaj, No. A90 316 467, 2005 WL 1104260 (B.I.A. Apr. 4, 2005), the Board noted that, like Garcia-Padron, the alien had been convicted at trial, but concluded that his conviction was no bar to section 212(c) relief because IIRIRA section 309(c) rendered the repeal of section 212(c) inapplicable to aliens whose deportation proceedings began prior to IIRIRA's effective date. The Board explained that Juncaj did "not need the Supreme Court's decision in INS v. St. Cyr, 533 U.S. 289 (2001), or the regulations promulgated as a result of St. Cyr, to preserve the availability of section 212(c) relief in his case. Such preservation, for this respondent, was accomplished by section 309(c) of the IIRIRA." Id.

The government makes no effort to distinguish these cases. It asserts only that they are not binding on this court. Although we agree that no controlling precedent applies to our assessment of this case, we nevertheless conclude for the reasons stated above that the plain

16

language of IIRIRA section 309(c) precludes the conclusion that Garcia-Padron is ineligible to seek section 212(c) relief. We reiterate that we express no opinion as to whether the facts and circumstances will warrant an award of such relief on remand.

## III.    Conclusion

To conclude, in IIRIRA section 309(c) Congress explicitly stated that the IIRIRA amendments, including IIRIRA's repeal of section 212(c), do not apply to aliens, like Garcia-Padron, whose deportation proceedings predate the effective date of IIRIRA. Accordingly, we GRANT the petition for review, VACATE the decision of the BIA, and REMAND the case for further proceedings consistent with this opinion.