**Mumtaz Ali HUSSAINI; Samrina Hussaini, Petitioners,**

**v.**

**Loretta E. LYNCH, U.S. Attorney General, Respondent.**

Nos. 14–4242, 15–3595.

United States Court of Appeals, Sixth Circuit.

Feb. 24, 2016.

BEFORE: SILER, COOK, and KETHLEDGE, Circuit Judges.

SILER, Circuit Judge.

Mumtaz and Samrina Hussaini, husband and wife who are natives and citizens of Pakistan, petition for review of an order issued by an Immigration Judge ("IJ") and affirmed by the Board of Immigration Appeals ("BIA"), denying their motion for a continuance and their request for administrative closure. Additionally, they seek review of the BIA's denial of their request for reconsideration of a final order of removal. For the reasons that follow, we deny the petition.

The Hussainis were admitted to the United States in 2005 as non-immigrant visitors with authorization to remain until May 27, 2006, and overstayed their visas. In 2007, the Department of Homeland Security ("DHS") initiated removal proceedings and charged the Hussainis with removability pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B), as aliens who remained in the United States for a time longer than permitted.

The Hussainis admitted the allegations against them and conceded removability. In 2008, Mr. Hussaini's father, a United States citizen, filed an I–130 visa petition on his son's behalf. The United States Citizenship and Immigration Services approved the I–130 petition in 2010. On March 8, 2012, Mr. Hussaini applied to adjust his status to that of a lawful permanent resident and named Mrs. Hussaini as a derivative beneficiary.

Beginning in 2008, various IJs continued the Hussainis' case numerous times. In 2012, the Hussainis again moved to continue, terminate, or administratively close the proceedings against them. The motion was denied by the IJ, who conducted a merits hearing and denied the application for adjustment of status.

The Hussainis filed an administrative appeal, challenging the IJ's denial of their motion to continue proceedings or to administratively close their case. The BIA dismissed the appeal in 2014, agreeing that

the Hussainis had neither shown good cause for a continuance nor satisfied their burden for administrative closure.

On December 19, 2014, the Hussainis filed a motion for the BIA to reconsider its decision. The BIA denied the motion, and the Hussainis filed a timely petition for review.

## STANDARD OF REVIEW

"Where, as here, the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Al–Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir.2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir.2007)). "To the extent that the BIA has adopted the IJ's reasoning, however, we also review the IJ's decision." *Id.* (citing *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir.2009)). We "review the BIA's affirmance ... under an abuse-of-discretion standard." *Ilic–Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007) (citing *Abu–Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir.2006)).

## DISCUSSION

### 1. Motion to continue proceedings

"[A]lthough the grant of a motion for a continuance is at the discretion of the IJ pursuant to 8 C.F.R. § 1003.29, we have jurisdiction to review an IJ's denial of such a motion." *Young Hee Kwak v. Holder*, 607 F.3d 1140, 1143 (6th Cir.2010). Because a grant of a continuance falls within the discretion of the IJ, we review the BIA's denial of a continuance for an abuse of discretion. *Abu–Khaliel*, 436 F.3d at 634. Here, neither the IJ's denial of a continuance nor the BIA's dismissal of the Hussainis' appeal constitutes abuse of discretion.

Though the BIA encourages the favorable exercise of the IJ's discretion "where a prima facie approvable visa petition and adjustment application have been submitted in the course of an ongoing removal hearing," *In re Hashmi*, 24 I. & N. Dec. 785, 790 (BIA 2009), IJs need not "grant a continuance in every case where there is a pending visa petition." *Id.* "Finding 'good cause' is crucial since a continuance, in effect, allows an alien to remain in the United States for a period of time without any defined legal immigration status. An unreasonable continuance would thwart the operation of the statutes providing for removal of inadmissible ... and deportable ... aliens." *Ukpabi v. Mukasey*, 525 F.3d 403, 407–09 (6th Cir.2008).

As the IJ recited, *Hashmi* establishes a series of factors that may be considered in determining whether to continue immigration proceedings. These factors, which are "illustrative, not exhaustive," include:

(1) [T]he DHS response to the motion; (2) whether the underlying visa petition is prima facie approvable; (3) the [respondents'] statutory eligibility for adjustment of status; (4) whether the [respondents'] application for adjustment merits a favorable exercise of discretion; and (5) the reason for the continuance and other procedural factors.

24 I. & N. Dec. at 790. "While all these factors may be relevant in a given case, the focus of the inquiry is the apparent ultimate likelihood of success on the adjustment application." *Id.* (citing *Pede v. Gonzales*, 442 F.3d 570, 571 (7th Cir.2006) (explaining that the denial of a continuance was not an abuse of discretion, given the "ultimate hopelessness" of the adjustment application)).

The IJ applied the *Hashmi* factors and offered ample reasons to explain why denial of a further continuance was appropriate. She first noted that DHS opposed

the Hussainis' motion due to the estimated six-year period that would elapse before their visas would become current. She reasoned that this distant projection rendered the Hussainis' eligibility for adjustment "speculative," as "[a] review of the visa bulletin reveals that though visa numbers may move faster or slower ... [they] tend[ ] to move more slowly than the chronological amount of time between the visa and the current calendar date." Moreover, DHS's opposition weighed against a continuance. *See Hashmi*, 24 I. & N. Dec. at 791 ("Government opposition that is reasonable and supported by the record may warrant denial of a continuance.").

The IJ next observed that although the I–130 visa petition had been approved, the Hussainis had nonetheless failed to establish eligibility for adjustment of status. Although Mr. Hussaini's application for adjustment of status was filed in the Immigration Court record, the Hussainis failed to submit the accompanying documents required to establish eligibility.[1]

Third, the IJ concluded that Mr. Hussaini had "provided no information to the Court to show that he merits the favorable exercise of discretion," such as significant community ties or full-time employment. Contrary to the Hussainis' repeated assertion that the IJ failed to acknowledge the American citizenship of their two children, the IJ explicitly observed that the Hussainis provided no evidence to suggest that

their departure from the United States would result in hardship to their children. Rather, she held that the Hussainis' children "are very young and ought to be able to adapt well should they return [to Pakistan] to wait for the visa processing."

Turning finally to the case's protracted procedural history, the IJ noted that the Hussainis' proceedings had remained pending since 2007, with continuances having been routinely granted. Given this lengthy history, the IJ determined that the Hussainis' motion did not warrant an additional continuance.

On administrative appeal, the BIA affirmed the IJ's observation that the Hussainis had failed to file a complete adjustment of status application otherwise establishing eligibility. The BIA further agreed that because no immigrant visa was immediately available, the Hussainis' future eligibility for adjustment of status remained "speculative." The BIA explained that even an application for adjustment of status that is prima facie approvable may not warrant a continuance if the visa availability is "too remote." Noting that the visa would "only potentially become available ... in approximately 6 years," the BIA agreed that the Hussainis had not shown good cause for a continuance. *See Matter of Avetisyan*, 25 I. & N. Dec. 688, 691 (BIA 2012).

---

1. In addition, the IJ opined that Mr. Hussaini's admitted failure to maintain lawful status and history of unauthorized work may have rendered him statutorily ineligible for adjustment of status pursuant to section 245(i) of the INA, 8 U.S.C. § 1255(i). According to this provision, an alien who engages in authorized employment or has failed "to maintain continuously a lawful status since entry into the United States" may not adjust his status unless he demonstrates that he was physically present in the United States on December 21, 2000. The IJ concluded that

Mr. Hussaini failed to satisfy this requirement and was thus ineligible to adjust his status. On appeal, however, the government concedes that the Hussainis need not have demonstrated physical presence as of this date and were thus eligible to adjust status pursuant to section 245(i) if a visa were immediately available. *See* 8 C.F.R. 1245.10(a)(1)(ii). In view of the government's position, we need not weigh the IJ's assessment of this matter on appeal. We review only the remaining reasons given for denial of the Hussainis' motion.

These reasons provide a sufficient basis to determine that neither the IJ nor the BIA abused their discretion. *See Abu–Khaliel,* 436 F.3d 627, 633–35 (6th Cir. 2006). "Where the record shows [Petitioners'] motion did not merit a continuance; where there is a reasonable explanation given by the IJ; where there is no showing of discriminatory intent; and where there is no departure for established policy, this Court will not find the IJ abused her discretion in denying the [Petitioners'] motion." *Ukpabi,* 525 F.3d at 408 (6th Cir.2008) (citing *Ilic–Lee,* 507 F.3d at 1048). Accordingly, the denial of the Hussainis' motion to continue was not an abuse of discretion.

## 2. Motion to administratively close

The Hussainis also contest the BIA's denial of their request for administrative closure, "an administrative convenience [that] allows the removal of cases from the immigration judge's calendar in certain circumstances." *Garza–Moreno v. Gonzales,* 489 F.3d 239, 242 (6th Cir.2007) (alteration in original) (quoting *Matter of Lopez–Barrios,* 20 I. & N. Dec. 203, 204 (BIA 1990)). This mechanism is generally utilized "to await an action or event that is relevant to immigration proceedings but is outside the control of the parties or the court and may not occur for a significant or undetermined period of time." *Avetisyan,* 25 I. & N. Dec. at 692. Once a case has been administratively closed, "either party can move to have the case [recalendared]" once it is apparent that "the case is ready for a hearing." *Hashmi,* 24 I. & N. Dec. at 792 n. 4.

Similar to the *Hashmi* factors discussed above, the BIA has established a series of factors for IJs to consider when assessing a petitioner's motion for administrative closure:

[W]hen evaluating a request for administrative closure, it is appropriate for an Immigration Judge or the Board to weigh all relevant factors presented in the case, including but not limited to: (1) the reason administrative closure is sought; (2) the basis for any opposition to the administrative closure; (3) the likelihood the respondent will succeed on any petition, application, or other action he or she is pursuing outside of removal proceedings; (4) the anticipated duration of the closure; (5) the responsibility of either party, if any, in contributing to any current or anticipated delay; and (6) the ultimate outcome of removal proceedings ... when the case is recalendared before the Immigration Judge or the appeal is reinstated before the Board.

*Avetisyan,* 25 I. & N. Dec. at 696.

■ The BIA did not abuse its discretion by upholding the IJ's denial of the Hussainis' motion for administrative closure. Contrary to the criticisms levied in the Hussainis' briefs,[2] neither the IJ's determination nor the BIA's confirmation thereof lacked a rational explanation.

The IJ explained that the *Avetisyan* factors governing administrative closure bear substantial resemblance to the *Hashmi* factors governing motions for continuance, with the addition of "the responsibility of the parties in contributing to the delay." As to this consideration, the IJ observed that Mr. Hussaini had abandoned his 1992

---

**2.** For example, the Hussainis argue that "the IJ needed to step in and rule on petitioners' request to terminate or administratively close[ ] but the IJ failed to even mention it in her lengthy opinion." But this portrayal of the decision belies even a cursory reading of the decision: the IJ devoted an entire section of her opinion to the Hussainis' request for administrative closure and application of the *Avetisyan* factors.

visa petition, which was terminated in 2002 for "failure to pursue." Mr. Hussaini took no action on the petition until 2008, when removal proceedings were initiated against him. Due to this abandonment, the IJ concluded that "the bulk of the issues concerning [Mr. Hussaini's] processing and visa wait time is directly due to his own lack of diligence."

The Hussainis assert that the BIA "ignored [Executive Office for Immigration Review] guidelines to [administratively] close proceedings, also presented to the BIA by petitioners in their motion for reconsideration." The guidelines to which the Hussainis refer are derived from a 2013 memorandum from the Chief Immigration Judge to all IJs, providing "additional background and guidance on continuances and administrative closure." The memorandum urges judges "to consider using the authority provided by *Avetisyan* [in] cases in which an underlying petition is involved and in cases in which the DHS and the respondent agree on the possibility of alternate case resolution." But because neither scenario exists here, the Hussainis' argument remains unclear.

Finally, the Hussainis insist that despite the DHS's opposition to administrative closure, the BIA should have administratively closed their case pursuant to internal DHS policy. They point to the June 2011 "Morton Memorandum" issued by the director of U.S. Immigration and Customs Enforcement, which identifies various factors that immigration officials should consider "as to when and how to exercise prosecutorial discretion consistent with the civil immigration enforcement priorities of the agency (DHS) . . . ."[3] But as the IJ noted, "The

memorandum . . . is not a directive to the [Immigration] Courts from the executive branch of government," but is instead "a policy statement regarding enforcement." The IJ discerned "no separate authority for the [Immigration] Court to administratively close proceedings due to the prosecutorial discretion initiative." *Id.*

Because DHS determined that prosecutorial discretion was not appropriate, it opposed the Hussainis' motion for administrative closure. "The BIA clearly has established that administrative closure 'should not be used if it is opposed by either party to the proceedings.'" *Garza–Moreno*, 489 F.3d at 242 (citing *Lopez–Barrios*, 20 I. & N. Dec. at 204; *Matter of Gutierrez–Lopez*, 21 I. & N. Dec. 479, 480 (BIA 1996) ("A case may not be administratively closed if opposed by either of the parties.")). Accordingly, neither the IJ nor the BIA abused their discretion by denying the Hussainis' request for administrative closure.

### 3. Denial of motion for reconsideration

■ The Hussainis' motion in 2014 for the BIA to reconsider its decision largely repeated their earlier objections to the IJ's decision but alleged one additional basis for relief-establishment of the DHS's Deferred Action for Parental Accountability ("DAPA") program, a policy to exercise prosecutorial discretion regarding parents of United States citizens or certain lawful permanent residents. *See Sanchez v. Holder*, No. 15CV0089–GPC(WVG), n. 3 (S.D.Cal. Jul. 13, 2015). The BIA denied the motion, finding that the Hussainis

---

**3.** Though the Morton Memorandum—actually entitled "Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens"—does not appear to have been filed in the administrative record, it may be obtained online at http://www.ice.gov/doclib/secure-communities/pdf/prosecutorial-discretion-memo.pdf.

failed to identify a factual or legal error in the November 2014 decision.

The BIA's explanation provides adequate justification to find that it did not abuse its discretion. "The purpose of a motion to reconsider is the correction of legal or factual errors that occurred in the BIA's original decision." *Mu Ju Li v. Mukasey,* 515 F.3d 575, 578 (6th Cir.2008) (citing 8 U.S.C. § 1229a(c)(6)(C); 8 C.F.R. § 1003.2(b)(1)). "Ultimately, the motion is a request to the BIA to reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Yeremin v. Holder,* 738 F.3d 708, 718–19 (6th Cir.2013) (quoting *Sunarto v. Mukasey,* 306 Fed.Appx. 957, 960–61 (6th Cir.2009) (internal quotation marks omitted)). When a motion to reconsider simply repeats the same arguments that the BIA previously rejected, the BIA does not abuse its discretion in denying the motion. *See Yeremin,* 738 F.3d at 719 (citing *Sswajje v. Ashcroft,* 350 F.3d 528, 533 (6th Cir.2003).)

To the extent that the Hussainis repeated arguments that they had raised in their initial appeal, they did not pinpoint any factual or legal error. Because the BIA had previously rejected these arguments, it did not abuse its discretion in doing so a second time. *See Yeremin,* 738 F.3d at 719.

Additionally, the Hussainis asserted that they were eligible for prosecutorial discretion pursuant to the DAPA policy, thus requiring the BIA to reopen their case. However, the BIA correctly observed that neither it nor the Immigration Court has jurisdiction over the DHS's exercise of prosecutorial discretion: "[T]o the extent respondents seek reopening to pursue an application for a favorable exercise of prosecutorial discretion, neither the Immigration [Court] nor the Board have jurisdic-

tion over such relief." *See Matter of Quintero,* 18 I. & N. Dec. 348, 349–50 (BIA 1982). As the BIA noted, the Hussainis may seek prosecutorial discretion from DHS; however, the final word on this request lies soundly with the agency. The BIA's denial of the Hussainis' motion to reconsider was not arbitrary, irrational, or contrary to law. *See Alizoti v. Gonzales,* 477 F.3d 448, 451 (6th Cir.2007).

Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure, the Hussainis have submitted a supplemental letter and citation. In it, they point to *Guts v. Lynch,* 623 Fed.Appx. 304 (6th Cir. 2015), another case involving the availability of an I–130 visa. But this similarity notwithstanding, *Guts* has little application to the instant case. In *Guts,* we reviewed the BIA's four-sentence opinion concluding that a petitioner failed to demonstrate prima facie eligibility for adjustment of status and denying his motion to reopen. *Id.* at 305. The BIA opinion at issue "fail[ed] to explore the record in any manner," *id.* at 306, and offered no "rational explanation" for its denial. *Id.* at 305 (quoting *Allabani v. Gonzales,* 402 F.3d 668, 675 (6th Cir. 2005)). Given the absence of "terms sufficient to enable [appellate review]," we concluded that the agency's perfunctory opinion constituted an abuse of discretion. *Id.* at 306 (quoting *Scorteanu v. INS,* 339 F.3d 407, 412 (6th Cir.2003)).

But the same cannot be said of either the IJ's decision regarding the Hussainis or the BIA's review thereof. As discussed above, the IJ's opinion reflects diligent consideration of the record and application of the *Hashmi* factors. And in its denial of their appeal of that decision, the BIA agreed that the Hussainis' "future eligibility for adjustment of status is speculative because there is no immigrant visa immediately available to them" and that they failed to "file[ ] a complete adjustment of

status application otherwise establishing eligibility." (AR at 9.) The BIA concluded that "[i]n light of the apparently long wait for visa availability, and failure to otherwise show *prima facie* eligibility for adjustment of status ... the [Hussainis] did not establish good cause for a continuance nor have they met their burden for administrative closure." (AR at 9.) The BIA "has no duty to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu*, 339 F.3d at 412 (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142–43 (5th Cir.1984)). Unlike the opinion at issue in *Guts*, the BIA here "provide[d] analysis beyond '[c]ursory, summary, or conclusory statements.'" *Guts*, 623 Fed.Appx. at 306 (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir.2004)). Accordingly, we find no abuse of discretion.

### 4. Due process claim

Finally, the Hussainis assert that they were deprived of a full and fair hearing because the IJ applied "the wrong circuit case law" and "ignor[ed] or flatly refuse[d] to respect the previous [IJs'] ruling[s] granting them a continuance." The court considers alleged due process violations in removal hearings de novo. *Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir.2008) (citing *Vasha v. Gonzales*, 410 F.3d 863, 872–73 (6th Cir.2005)).

Though the Hussainis do not point to a specific extra-circuit citation to which they object, this oversight is of little moment. While the precedent of other circuits is nonbinding, courts of all kinds, including IJs, remain free to consult such authorities. The Hussainis provide no legal authority suggesting that citation to extra-circuit law constitutes a due process violation in this context.

The Hussainis' second alleged due process violation is equally misplaced. They assert that "the record is replete with requests for continuances which had previously been granted by other [IJs]," and that "a previous well-reasoned decision granting a continuance should not be disturbed simply because a new IJ takes over a case, essentially erasing the entire record of proceedings in which a favorable exercise of discretion was granted." The Hussainis therefore suggest that because one continuance was granted, all future motions for continuance must also be granted in order to preserve their right to a full and fair hearing. We agree with the government that "[t]his proposition would render [IJs] powerless to objectively and independently evaluate subsequent motions to continue under 8 C.F.R. § 1003.29 and *Matter of Hashmi* [.]"

As the IJ noted, the Hussainis were represented by counsel throughout their immigration proceedings and had ample opportunities to seek relief and present testimony and evidence. *See, e.g., Vargas–Hernandez v. Gonzales*, 497 F.3d 919, 926–27 (9th Cir.2007) ("Where an alien is given a full and fair opportunity to be represented by counsel, to prepare an application for ... relief, and to present testimony and other evidence in support of the application, he or she has been provided with due process.") Accordingly, the Hussainis argument is not well taken. *See Abu–Khaliel*, 436 F.3d at 634 (citing *Huicochea–Gomez v. INS*, 237 F.3d 696, 700 (6th Cir.2001) ("The failure to be granted discretionary relief does not amount to a deprivation of a liberty interest.")).

The petition for review is DENIED.